The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Good morning, counsel. We're happy to hear your argument in No. 1944-64, United States v. Moriello. Mr. Heroy. Good morning. Good morning, and may it please the court. My name is Rob Heroy, and I am representing Ms. Moriello. The regulations that are before us check all the boxes for vagueness and delegation concerns. I'd like to begin with vagueness and breadth. Here the regulations provide little in the way of guidance and loads in the way of discretion, such that neither provision comports with due process or fairness. And it's significant here for a number of reasons. First, while we're not talking about RICO conspiracies or Hobbs Act robberies, we're talking about a conviction that's significant to Ms. Moriello. She's a board-certified attorney respected by her peers, who now has a criminal record where she was singled out for her conduct and criminally charged after she stood up for herself. She's now a criminal despite the lack of an intent to commit a criminal action or a clear violation of honor part. She wasn't selling drugs. She had no reason to think that a verbal argument with a private security guard would make her a criminal. The regulations here cast such a broad net that they could make anyone of us a criminal, and it's too much discretion for the executive branch. This is particularly true where the regulations can criminalize otherwise benign conduct. For example, if a security guard out front of the courts, and we were under normal operating procedures, was instructing a crowd to wait in line to get in the building, someone who tries to cut to the front of the line because of an emergency issue in their case or maybe a medical condition has technically committed a crime if they disrupted the security guards. Or, for example, a boisterous individual who might slow down a senator on the way to a vote within the Capitol building to try and get a selfie. And this concept doesn't jive with due process. Especially here where there was testimony that attorneys used phones in court all the time, but it was enforced against an attorney who the judge admittedly disliked. Not because she was sloppy or underhanded, but because she was too zealous. And the constitutional failure here falls in line with this court's decision in Little v. Doyle. That's a case where protesters in Virginia were threatened with arrest for violation of a loitering on a bridge statute. That law cast so broad a sweep that it enabled authorities to prosecute unpopular groups, and this court found a void for vagueness. Similarly, in 2018, the Supreme Court noted the same objections with the statute that forbade corruptly obstructing the due administration of the Internal Revenue Code in Maranello v. United States. And that same principle spans back to the city of Chicago v. Morales, which prohibited loitering by gang members within the city. So the question is, what is vague about these regulations, and what's impermissibly vague? I would contend, first, the term disrupts, that it borders on meaningless. It's not a far cry from the term annoy, which the Supreme Court found void for vagueness in Coates. The regulation doesn't say corruptly disrupt, significantly disrupt, or even disrupt the operations of a government agency. It just says disrupt a government employee. If we allow any disruption of a government employee to constitute a criminal charge, any one of us could become a criminal. Last year, the Sixth Circuit noted similar reasoning in Novak. It's the same term that Justice Gorsuch harped on in Baldwin, and it's the same term that the District Court in Nevada took issues with the regulation earlier this year. I contend that authorized employee is also troublesome. It's vague in a different sense, in that no one knows who is and isn't authorized, particularly in the context of regulation that says it's a crime to fail to obey federal police and other authorized employees. Why would we mention federal police if we aren't suggesting that that term implies someone along the lines of federal police officer? Senator Moyer, let me ask you a question. Are you challenging this regulation facially, or is this an as-implied challenge? I would say under either grounds the regulation fails. Specifically, I would challenge it facially under Marinello v. United States and under Little v. Doyle, but I would say as-applied the challenge also fails. If we want to discuss the as-applied angle, I can go into that. I recognize that my friends in the government have cited some precedent from this court, as far as Castagnol and Scheel, that are both cases. I believe they were both from the 70s. I would contend that those cases are not binding on the court, because they deal with a predecessor regulation that had a lot of similarities but a few differences. Beyond that, I would say that the intervening authority in Little and Marinello comes into play, but as an as-applied challenge, those cases are vastly different. The principle is pretty much the same. You've been a flogger for a while yourself, I think. The judge normally runs the courtroom, and they have a bailiff, what we call them in IFAC's law, that assists the judge in keeping order and running things. And this is a special kind of proceeding, but she needed special permission to even be in there, right? With the immigration proceeding, it was normally a closed proceeding. Yes, Your Honor, that is correct. I would still say that this conduct provides too much discretion, and I think if we look at Castagnol, the court said it doesn't require a high degree of intelligence to conclude that breaking through a line of U.S. Marshals guarding a strategic government building close to the public and then refusing to leave is a criminal offense. I think those folks, they probably wanted to be arrested. They knew their conduct was conduct that would get them arrested, whereas someone who disagrees with a bailiff, especially where you've got a sign that says, and I know there was some back and forth about the sign, but you've got a sign that seems to tell her she can use her phone, and then you've got sort of an ad hoc decision by the bailiff for her not to use her phone. I don't think she realizes she's committed a crime. Part of the reason for that is the regulations talk about failure to obey an authorized employee or a government, and then there's the government official provision. But when we talk about an authorized employee, if I see a U.S. Marshal or Homeland Security officer and they tell me you need to do this, I'm going to know that if I don't do what they're going to tell me, I'm probably going to wind up in handcuffs. Maybe there's a questionable premise there, but at least it's a rule that we understand. But someone looking at these regulations isn't going to understand that an authorized individual is going to apply to a private contractor or even to an immigration judge, and there's not any precedent that has been cited by either side that has recognized anyone but someone who's similar to a police officer as an authorized individual. None of these cases have extended that term beyond people like U.S. Marshals and federal police officers. Well, you know, to buy that argument, we have CSOs in every federal courthouse in this country, and they are private contractors. So are we saying that they can't maintain order inside the courthouse? No, I believe they can maintain order, and so I would say sort of there's two issues there. First, if I'm in your courtroom and I'm acting up and I'm playing on my cell phone in there, you can hold me in contempt if I'm doing that. But secondly, as far as the CSOs, they can maintain order, but when the U.S. Marshals come in and say you've got to stop, then I think those are clearly authorized individuals. And so I think it's – I certainly understand and respect the CSOs and their work, but if we're talking about holding someone to a criminal standard, I don't think that we would necessarily recognize that a private security guard is an authorized individual. At least I don't think it's clear enough to hold someone liable. And then I certainly don't think that they should qualify as federal employees under the regulations. I would say a reasonable person shouldn't be and shouldn't anticipate being charged with a criminal offense for not obeying a federal employee when that person's not actually a federal employee, that they're paid by a private company. Or in this case, we don't know if that private company was maybe hired by another private company. And so I think these distinctions are really critical. We're talking about saddling criminal convictions on otherwise law-abiding citizens, especially in a case where we talked about a judge who didn't particularly care for this attorney, and he discussed that he helped push the prosecution forward. He didn't ask for the citation, but Ms. Moriel was tried on an information, and the judge talked about pushing this judge to proceed with the case. And when we look at both the regulations, there are a number of specific acts of conduct that it says are going to be illegal. And when we look at those specifics, like cursing, shouting, obstructing passageways, throwing things out windows and off bridges, she didn't do that. She stood up for herself with this guard, and now she's become a criminal. And maybe it's easy to kind of look at that and say maybe this isn't something that's a particularly significant case or a particularly significant punishment, or maybe as they talked about, she had her chances to get out of it. But it's anything but that. This case doesn't just impact Ms. Moriel, but these regulations have started popping up more and more frequently in the case law you pull up over the last two or three years, as opposed to a handful of times over the decades before that, and this is sort of my transition to non-delegation. But if we allow the executive branch to classify anything that it wants to as a disturbance or anyone that this can be stretched to as an authorized employee or a government employee, then we're giving the executive branch more and more authority to flex its muscles. And if there's one thing we've learned, that if we give the exercise that authority, it's going to exercise that authority in spades. And that's why I would ask the court to rein in these regulations. Within non-delegation, the court has noted that delegations raise particular concerns where criminal sanctions are involved and where you have regulations that are sort of couched in mouth holes, as the Supreme Court used in Whitman. And it's concerning here because Congress didn't create duties to obey unspecified and assorted government employees, and maybe Congress never would have done that. But it's potentially an unpopular idea, especially where much of the population is concerned with infringements on their individual rights and being told what to do by government officials. And these politically relevant and politically charged decisions should be made by the legislative branch. And if there's any question regarding whether being told what to do can inflame political passions, it's not hard to find examples in the midst of a pandemic. All sides, no matter which side they're on, are fired up regarding authority to require masks, to close businesses, to keep kids home from schools. News stories talk about fistfights, breaking out in restaurants and airplanes, and guns being pulled over these arguments. But more broadly, you've got a concern that people don't want to be told what to do by various government officials or that they have a duty to obey a federal employer and authorized individual every time they go to the post office, to the Social Security building, to the VA, or any other federal building where they might have some business. Instead, we've got a decision that was made by a branch that was not accountable to legislative constituents, and it was buried in a code that no one knows. When this first came up, people had to get on Google and say, what is this regulation, or maybe in my case, had to start off by Googling what is the GSA. But then when we look to the cases that have talked about delegation, 2B has kind of got a lot of the bowl running when talking about intelligible principles and substantial guidance. Does the statute do more than request fact-finding, the delegating statute? Does it set forth criteria to consider and by which to measure, and does it leave policy judgments to the executive branch? I don't think we see any of that here. And then if we process Gundy, I recognize that it's finding precedent for a fairly discreet set of law, but it's still a plurality joined by a justice that concurred in the judgment but had serious reservations. And you have a dissent that's observed that Congress can readily enlist the executive to fill in details and find facts, and noted that those were sort of the distinguishing features of cases that have upheld delegations. But we can't just hand over the executive the power to write its criminal code, and that's what we've got here. It's not a 2B scenario where the executive engaged in fact-finding to stake out dangerous drugs and protect the public, but it's sort of a secret backdoor criminal catch-all that the executive can invoke when it wants to. And I would contend that there are many times that the executive could find a way to invoke this against an unpopular actor. And to finish up, I don't have a lot of time here, but to briefly address sufficiency, if the court were to adopt a reasonable interpretive restraint on these provisions, the verdict would not be supported by substantial evidence. And the government's position is weakened where the magistrate judge didn't provide a verdict opinion, and there are different alternative theories of guilt. And while I agree with my friends in the government that harmless error would apply, I disagree with the conclusion that the defense needs to show a constitutional error. I think that relies on a specific language in Beriano that involved a post-conviction writ. I think it was coram nobis. I think that unless the jury must have convicted her based on the correct interpretation, the verdict can't stand. So looking briefly at the two charges, the first is disrupting a government employee. If we set aside the district court conclusion that the security guard is a government employee, then we have the one government employee who's the immigration judge whose disturbance is limited to a click in his mouse and being annoyed. And even if that's sufficient for this court to find that it was a disruption, it still leaves open a substantial possibility of the magistrate judge convicted based on the alternative theory. And I think that has some support in the record where the verdict discussion centered around the private security forces being disrupted. On the second count, failing to comply with an authorized individual, I don't think there's a valid interpretation where someone in Ms. Morello's shoes would be required to recognize either party as an authorized individual. Thank you, and I'm happy to answer any questions. Thank you very much. Thank you. Counsel? Good morning, Your Honors. May it please the court. Anthony Enright for the United States. The district court properly convicted Ms. Morello of two petty offenses for disruptive conduct in a Charlotte immigration courtroom. I'll turn to the question of vagueness and non-delegation, which I think my friends spent the most amount of time on. And I think the answer is pretty straightforward in this case because we have the Casiagnol opinion, which really resolves both questions. It held a similar regulation. And when I say similar, it's really the predecessor to this one, not vague and not an impermissible delegation under a pretty much identical delegation statute. The statute at issue in Casiagnol, similar, had a chain of specific conduct and then covered also any other unseemly or disorderly conduct on the property. Much broader than the regulation for which Ms. Morello was convicted, which requires specifically conduct that impedes or disrupts the performance of official duties. And what this court held was that's not vague because we construe it in its context as prohibiting conduct on federal, I'm quoting Casiagnol now, as prohibiting conduct on federal property, which is intended to and does interfere with, delay, or impede the normal and orderly conduct of government business on such federal property. So in other words, the narrowing construction that Casiagnol applied is essentially what the statute is today. And they held that is not vague. That's controlling, Your Honor, because it is essentially, that case is a few years old. I think it turns 50 this year, but it applies with equal force, if not greater force, today where the statute is narrower. Also, and I do believe the defense pursued this as an as-applied challenge. If it's a facial challenge, you have to essentially show that it's vague in all of its applications. And there are plenty of examples provided by cases interpreting the predecessor regulation, the Baldwin case by Judge Gorsuch, et cetera, where that would be almost impossible. But as applied, certainly we're all familiar with the electronic device policies of pretty much every court. I don't recall ever being in a court that didn't have an electronic, strong feelings about the use of electronic devices. They can be disruptive. And when a court tells you or communicates an order through a bailiff, don't use an electronic device, that can be disruptive. Was this bailiff in some kind of a uniform? She was in a uniform. She had patches. She had a badge. And she sat in the bailiff's seat in the courtroom and was one of the only people in the courtroom at the time because it was a closed asylum hearing. So I don't think there's any dispute that she was on very clear notice that Officer Bridges was a bailiff. And I think in her own testimony, she referred to her as a bailiff. There was a bench trial, correct? There was a bench trial in Miss Moriello's case. And then in the courtroom hearing, that was an asylum proceeding, which was a proceeding before the court. And Miss Moriello had a bench trial before the magistrate judge? She had a bench trial before the magistrate judge. It was a petty offense subject to, I think, no more than 30 days imprisonment and a $5,000 fine. What I'm getting at here, the facts of this case, we take that she was convicted in the light most favorable to the government. Absolutely, Your Honor. The same standard that applies in a jury trial. Are they spelled out in an opinion? Or do we have to figure them out from the evidence record? They're spelled out in an opinion by the district court, which essentially, when you have a magistrate... The district court didn't hear the case. The district court did not hear the case. But if this court's looking for a helpful summary of the facts, the district court did provide... That's where I'm getting at. Yes, Your Honor. The district court did provide a helpful... A hopefully helpful summary of the facts. I hope we did too, but the district court certainly did. In its opinion, essentially when there's an appeal of a magistrate judge's trial in a petty offense case, the district court doesn't reweigh the evidence. They occupy the same role as this court ordinarily does. And so there's basically two levels of appellate review. So the district court essentially performed the same function that this court's being asked to perform, and the court provided an opinion, and it's in the joint appendix. And I think both parties have cited it. Essentially, I don't think the facts are largely... The facts are largely undisputed. Ms. Bridges spoke to the joint. Well, they're largely undisputed. The facts are that the ones that are light were favorable to the prosecution. After a conviction in a criminal case, that's what they are. That's exactly right, Your Honor. There's only one version of them. It's the factual scenario in the light most favorable to the government. That's exactly right, Your Honor. So for that purpose, you adopt what Judge Rattiger said, and you adopt and you support what he said in your brief. Is that correct? Well, we adopt... There's not much difference, I don't think. There might not be a difference at all, but I'm just trying to pin you down on what you... The facts that we would rely on are the facts that are in the trial transcript that the evidence show taken in a light most favorable to us. To the extent this court... I think the district court's opinion is a fair summary of those facts. To the extent this court disagrees with those facts, I would think the trial transcript and the evidence actually in the record would control. But I don't know that... I think that's unlikely to be an issue in this case. But there was no dispute, I think, at any time that Judge Petanato, who testified, he communicated a specific order. I see Ms. Moriello texting on the phone. I want you to tell... Communicate it to the bailiff. I want you to tell her to turn it off. The bailiff communicated that to Ms. Moriello, and she refused for a period of at least 5 to 10 minutes, eventually going out of the courtroom, requiring more bailiffs to come in, Federal Protective Services and Department of Homeland Security people to become involved. Judge Petanato testified that it was visually disruptive and distracting for a period of minutes. And by the way, we're not talking about just texting. We're talking about, after receiving an order to stop texting, continuing to put up a fight with the bailiff and move around the courtroom while refusing to put her phone away that disrupted the court while the court was actively presiding over an asylum proceeding. And in that context, the participants in the asylum proceeding demand and deserve the court's undivided attention. So we've cited a number of cases where disruptive conduct, it was sufficient, for example, in the Greenhead case, the Supreme Court decision about disruptive conduct near a school, that taking the students away from their seats to look out the window was enough. The similar regulation in the VA hospital, people walked away to look out the window to see what was going on. That was enough of a disruption. Judge Petanato wasn't sitting in his office typing a memo. He was on the bench attempting to focus on the parties. To disrupt a judge in that context, which might be the asylum seeker's only opportunity to make his or her case, is not a minor disruption. It's a very substantial disruption in the core function of the government employee that sits and presides in an immigration proceeding. So I think... What was... Did the defendant here give a rationale for her behavior? Well, I don't know if I would consider it a rationale. Now, what she said was she believed that she could use her phone for business purposes, that it was her right to do so. And she did explain that she didn't believe the bailiff when the bailiff repeatedly told her that the judge asked her to stop. Now, the district court was certainly, under the standard of review, the district court wasn't required to believe that, both because it borders on the fanciful, that when you are in a courtroom and a bailiff communicates to you, especially a small courtroom where you're one of the only people there, communicates to you the judge has asked you to put away your cell phone, that that's... Excuse me? Certainly. Judge King dropped. I'm going to take a moment to reconnect him. Okay, thank you. Certainly. If it's all right with Your Honor, I'll pause until he returns. Yes, you should. Certainly. This is Judge King and I'm back. Great. Counsel, you can proceed. Thank you. I'm sorry about that. It's been my fault. Thank you, Your Honor. Correct me if I'm wrong. I think I was still answering Judge Mons' question about any rationale Ms. Moriello might have provided in terms of for her conduct. And I don't know if I'd considered a rationale, but she did say that, both that she believed she had the right to continue to text and use her cell phone for business purposes. And she testified that she didn't believe that Officer Bridges, when Officer Bridges told her that the judge had actually communicated the order to stop texting. Did she further testify that if she had known that the judge had ordered her to stop, she would have? She did not. She testified that... But she had done? I don't believe so, Your Honor. I don't believe so. But the judge was... The judge was certainly not compelled by the evidence to credit that testimony. As a general matter, credibility determinations are within the sound province of the trier of fact. And in this case... You're talking about the judge there. You're talking about the magistrate judge. I'm talking about the magistrate judge. The magistrate judge was not required to credit Ms. Moriello's assertion that she did not believe the bailiff when the bailiff told her that the judge had communicated the order. How big is this court where this took place? It was about three or four benches, I think, multiple people testified. I guess the equivalent would be something like the Tweed courtroom in the Richmond courthouse. That's an inference I'm drawing just based on the description, but relatively small. I do think the difference is the door is toward the bench. But it was also... It's telling that it was almost empty. It was a closed proceeding. So there were the parties, and then there was... The only person in the gallery was Ms. Moriello until the bailiff went and interacted with her. And in that context, I think it sheds some light on why that might have been distracting to Judge Petnato. But the district court, or a magistrate judge's authority... I'm sorry, not a magistrate judge, an immigration judge's authority to control persons in their courtroom, certainly when they are the presiding judge during a hearing, is functionally comparable to that of an Article III judge. And a reasonable person... And I think the court could reasonably infer that Ms. Moriello, in fact, well understood that the judge had the authority to tell her to turn off her cell phone. And when communicated by a bailiff, she was required to do that and chose not to. And ultimately, I think, that covers the sufficiency of the evidence. I don't know that I have too much to say beyond that, except that I'm more than happy to answer any questions the court has. And I want to make sure I give the court an opportunity to ask anything before I yield the balance of my time. You said there was disruptive conduct. Did the magistrate judge find, or make a finding, as a matter of fact? So the magistrate judge returned a general verdict of guilty. And so the question is, under the standard of review, whether the evidence is sufficient to support it, just like they're under a... when it's a jury trial. And so the answer, I think, is yes. The court made a finding because there has to have been a disruption for there to be disruptive for there to have been conduct impeding or disrupting the performance of official duties by government employees. And that standard is not... that threshold is not very high. That... the statute is limited because it requires you be on GSA property. And it's limited in the sense that they be official duties. But the extent of the disruption does not have to be great. The examples we've cited, for example, from the VA, Renfro. People walking away from their stations to find out what's going on because someone's being loud. That's the extent of disruption that is okay. Cassie Agnell's a good example. All... one of the defendants did to violate the ordinance was to overstay a permit. They had a permit to demonstrate at the Pentagon. It ended. They communicated. The police communicated, said, hey, time to go. They stayed over. Not a huge disruption. But in this case, I think the disruption is much greater than taking someone away from their station because it was the disruption to a judge who was obligated to concentrate on the parties before it during the hearing over which it was presiding. That's fundamentally different from distracting someone from office work that they can leave and come back to to take a break without any significant problem. Okay, I think we understand your position, counsel. Certainly, Your Honor. No rebuttal? I'm sorry. Judge King or Judge Floyd, do you have any questions? I don't. No. Okay, well, I'm glad to hear any rebuttal. Thank you, Your Honor. Thank you, Your Honor. In rebuttal, I'd like to address first the facial challenge. And my friend in the government brought up that we would have to show in all applications that this statute's not valid or this regulation. And I think he is treading into a Salerno-type standard, which I would contend that this court has now jettisoned. And I think that came as a result of an en banc decision, Colby v. Hogan. I want to say it was 2018, but it was fairly recently, if I'm wrong about that. It involved copies of firearms. But within that opinion, the court noted that it had specifically abandoned the Salerno standard following United States v. Johnson. And so I would contend that the correct standard no longer is that. The correct standard is to look at the regulation itself and determine whether or not it is or isn't vague when you look at it and put it in normal applications. And so we've talked a lot about this asylum hearing and that sort of thing. But the problem with the regulation is that it's not limited to asylum hearings. It says on any government property, which could include any sort of place where people need to go to. Folks might need to go to the post office, to the VA, to the Social Security office, wherever they need to go. And the statute can apply and can be used to prosecute someone in this context. And I'm sure that in whatever context it is, we could find a reason to say that that function is particularly important, that the mail carriers need to get out the mail, all those sorts of things. But I think if we focus too much on the asylum here, we've lost track of the fact that this is a regulation that the executive branch can invoke when it chooses to for conduct that doesn't merit criminal sanctions. So I'm happy to answer any questions the court might have. I don't think we have any questions. Thank you very much for your argument. Thank you. And we will take the case under advisement. And I guess I would ask the clerk to adjourn court.
judges: Diana Gribbon Motz, Robert B. King, Henry F. Floyd